IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.                          Case Nos.:        4:15cr38/MW/MAF
                                              4:18cv178/MW/MAF

DURRELL LEE,
      Defendant.

_____

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant Durrell Lee's Motion
to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 and the
Government's response in opposition.   (ECF Nos. 91, 92, 98, 102.)   The
case was referred to the undersigned for the issuance of all preliminary
orders and any recommendations to the district court regarding dispositive
matters.   *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed.
R. Civ. P. 72(b).   After review of the record, the court recommends that the
§ 2255 motion be denied without an evidentiary hearing.   *See* Rules
Governing Section 2255 Cases 8(a) and (b).

## I.    BACKGROUND and PROCEDURAL HISTORY

Lee was charged in a two-count indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count One) and possession of marijuana in violation of 21 U.S.C. § 844(a) (Count Two).   ECF No. 8.   Count Two was dismissed upon the Government's motion before trial.   ECF Nos. 34, 36.

The charges stemmed from a traffic stop of a vehicle driven by Defendant Lee on August 7, 2015.   At the time of the stop, the owner of the vehicle, Eric Goodson, was riding in the front passenger seat and Jacob Russell was in the back seat.   The officer who conducted the stop noted that Lee seemed nervous and he smelled marijuana emanating from the vehicle, so he called for a K-9 backup.   When the K-9 unit arrived, the officer told Lee that he smelled marijuana.   Lee admitted that the men had just smoked some marijuana in the car.   The officer then clarified that he smelled unsmoked marijuana, and Lee turned over a 3-gram bag of fresh marijuana.   The officers removed all three men from the vehicle to detain them.   Goodson and Russell did not resist, but an officer had to deploy his taser to subdue Lee.

Neither Goodson nor Russell had any contraband.    Officers found three Xanax pills and $1,415 in cash when they searched Lee.    ECF No. 69, PSR ¶¶ 13-14.    During the search of the vehicle they also discovered a baggie containing an ounce of marijuana on top of a loaded Glock .40 caliber weapon under the driver's seat.    Small quantities of several other controlled substances were located in the driver's side door, and the center console contained a black digital scale, two grinders, and $320 in cash.    In one of the two bags in the trunk, officers found two pistols, a .40 caliber extended magazine that matched the Glock pistol found under the driver's seat, and a bank application bearing Lee's name and social security number.

Each of the passengers waived his *Miranda* rights and gave recorded statements to investigators.    Lee admitted to possessing narcotics, but he denied knowledge of the firearms.    Goodson told investigators he had met Lee a month prior and purchased drugs from Lee at least three times. During the last transaction, Lee asked to borrow Goodson's vehicle, and Goodson agreed.    At the time of the stop, Lee had been using Goodson's car for about three days.    Goodson recalled having seen the black Glock the day of the traffic stop as well as on other occasions.    He said Lee kept

the Glock under the seat inside the vehicle but tucked it in his waistband when he left the car.

During his interview, Russell admitted knowing about a small amount of marijuana in the vehicle but denied knowing about any other drugs or firearms.   ECF No. 98-1 at 1-2.   Russell said he had known Lee for about 8 years and he had seen him with a gun a couple months ago.   He later amended this statement to say he had seen Lee with a gun on a regular basis.   *Id.* at 1.   Neither Goodson nor Russell was charged as a result of the traffic stop.

A federal criminal complaint was filed and Assistant Federal Public Defender Joseph DeBelder was appointed to represent Lee.   ECF Nos. 1, 5.   The court released Lee after a detention hearing on August 10, 2015, and issued an order setting conditions, including that he remain on 24-hour house arrest.   ECF No. 7.   Lee continued on pre-trial release after his September 2, 2015, indictment.   On September 11, 2015, DeBelder moved to modify the conditions of Lee's release to add the condition that Lee "undergo a mental health assessment and all recommended follow-up treatment" and to modify his home confinement to allow him to attend the assessment and participate in follow-up treatment.   ECF No. 16.   The

motion reflects that "based on discussions with Mr. Lee and others"

DeBelder and Lee's pretrial services officer "both agreed that it would be

appropriate for Mr. Lee to undergo a mental health assessment and

participate in recommended follow up treatment." *Id.* Significantly,

counsel did not raise concerns about Lee's competency. The court

granted the motion and directed Lee to undergo a mental health

assessment and comply with all recommended follow-up treatment. ECF

No. 17.

DeBelder sought three trial continuances. *See* ECF Nos. 18, 22, 25.

Lee's mental health formed the basis for one of the requests. In the

second motion for a continuance, counsel noted that the mental health

counselor who evaluated Lee had recommended that Lee be seen by a

psychiatrist. ECF No. 22. After some delay in obtaining that evaluation,

Lee was being treated and receiving prescription medication. DeBelder

further noted:

> Due to Mr. Lee's mental health issues, undersigned counsel's
> discussions with Mr. Lee related to the circumstances and legal
> issues of the case as well as his disposition options has been
> limited. As Mr. Lee is now being treated by a psychiatrist and
> receiving medication, counsel has recently been able to discuss
> these issues with Mr. Lee. However, in order to properly

advise Mr. Lee as to his defenses and disposition options,
counsel believes a continuance of the trial . . . is necessary.

ECF No. 22 at 1-2.   Significantly, counsel did not question his client's

competence in the motion, which the court granted.   ECF No. 23.

Trial began on January 11, 2016.   Eric Goodson, who had been

riding in the front passenger seat at the time of the stop, testified that he

had been addicted to the opiate dilaudid for six years.   ECF No. 85 at 35.

He contacted Lee to purchase dilaudid a few days before the traffic stop.

In exchange, Lee asked for money and transportation, so the two had been

riding around in Goodson's car, and staying at hotels.   *Id.* at 37-38.

Goodson admitted he was on drugs at the time, and his recollection of the

time he spent with Lee was "hazy."   *Id.*   However, he recalled having seen

Lee stash the Glock under the front seat of the car shortly after Goodson

picked him up, although he did not see the gun after that.   *Id.* at 42-44, 60,

71.   Goodson also admitted changing his story when he was interviewed

by law enforcement because he was concerned about getting arrested and

not being able to get more drugs.   *Id.* at 38, 76-77.

The Government did not call Jacob Russell, the other passenger, as

a witness at trial.   However, it advised the court that Russell had been

subpoenaed and was available if the defense chose to call him.   ECF No.

85 at 78.

After the Government rested its case, DeBelder advised the court that

Lee had an issue he wanted to bring up regarding a decision about a

particular witness.   ECF No. 85 at 125.   The court expressed reticence to

inject itself into a decision about whether a witness would be called, but

allowed Lee to raise his concern, as requested.   The following exchange

took place:

> THE DEFENDANT: I would like Jacob Russell's
> testimony.
>
> THE COURT:   I'm sorry?   Oh, Russell's testimony,
> meaning the other individual that was in the car?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT:   And, Mr. DeBelder, you have discussed it
> with your client and you've made a determination that you
> believe that that would be detrimental to the defense
> case?
>
> MR. DEBELDER:   That's correct.   I don't believe it's in
> his best interests to call Mr. Russell.
>
> THE COURT:   Mr. Lee, I can't and would not, and it
> would not be appropriate for me to direct your lawyer to
> call a particular witness.   You and Mr. DeBelder can
> have some additional time before you rest, that is the
> defense rests, to discuss that issue, namely whether to

call Russell. But this is not -- there are decisions that you get to make -- and the United States Supreme Court has made this plain.

You get to decide, for example, whether you waive the right to jury trial or not.   Mr. DeBelder could not say, Judge, we want a nonjury trial over your objection.

Mr. DeBelder also can't decide whether you enter a plea or not. Whether or not a defendant enters a plea is up to the defendant.

A third decision that you and you alone get to make -- after consulting with counsel, but the decision ultimately is yours as to whether or not to testify or exercise your right to remain silent.

The other decisions that are made during the course of a trial, what witnesses to call, what questions to ask and so forth, I would expect counsel, Mr. DeBelder in this case, to confer with you and talk to you, as was done, for example, in jury selection, where y'all sat and chatted together at length and we took a break, and Mr. DeBelder asked for more time for the two of y'all to talk, and we took various pauses in jury selection so y'all could consult.

After every witness Mr. DeBelder has walked over and said, Judge, can I have a break, and he's gone over and talked to you, and sometimes comes back and asks some additional questions.

So certainly that's appropriate.   It's appropriate for Mr. DeBelder to do, as he's done throughout these proceedings, which is discuss the matter with you and allow for some input from you.

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

But I cannot and would not order him to call a particular witness.   Ultimately, the decision of which witnesses to call, setting aside your testimony, a lawyer has to make that tactical decision.

While you may not agree with that's the optimal way to do this, that is the law. And I'm pausing to do that because I'm not going to show disrespect to a defendant, or anybody that appears in front of me, by just from on high saying, there's not a decision for me to make. I'm trying to go through this so that you understand that there are certain decisions you get to make and some that your lawyer gets to make as a matter of tactical decision, and that's what the law tells us.

I don't expect you to like it, but I just want to make sure you understand the difference; that is, some things you and you alone get to decide, and some things the lawyer has to decide. But go ahead, you were raising your hand.

THE DEFENDANT: So, if he wanted to call him, could he call him?

THE COURT: Sure.

THE DEFENDANT: Okay.

ECF No. 85 at 126-129.

The defense did not call Russell as a witness, but called Lee's cousin, Jaquez Rogers.   ECF No. 85 at 140.   The thrust of Rogers's testimony was that Rogers had seen Eric Goodson with a gun, when Rogers and Goodson were alone in a hotel room, but Rogers had never

seen Lee with a gun.   *Id.* at 141-147.   After briefly recalling Special Agent

Osburg, DeBelder asked for a break to "talk to [his] client about the

witness."   *Id.* at 165.   After the break, counsel advised the court that the

defense was not going to call any additional witnesses, and the court

confirmed through a colloquy with Lee that he had decided not to testify.

*Id.* at 166-67.

The jury found Lee guilty of possession of a firearm by a convicted

felon.   ECF No. 59.   It specifically found Lee possessed only the Glock

.40 caliber pistol and Blazer .40 caliber ammunition that law enforcement

found under the driver's seat of the vehicle.   It did not find Lee guilty of

possessing the two firearms or ammunition located in the duffel bag in the

trunk.   *Id.*

The Government sought to have Lee detained pending sentencing.

DeBelder opposed the Government's request, citing Lee's ongoing mental

health treatment.

> MR. DEBELDER:   … I got an email last week from Ms.
> Sanchez [Lee's pretrial services officer]   I don't know
> how much the Court has been aware of Mr. Lee's pretrial,
> but Ms. Sanchez has been working really hard with Mr.
> Lee in getting his proper treatment.   He does have some
> significant mental health issues.

> And she indicated to me in the email that she was hoping
> that he would remain out until sentencing, from her
> perspective, because she feels like he's finally getting on
> the proper medication.   They've arranged for – as the
> Court knows, there's a lot of things that need to get the
> ball rolling as far as treatment.   Mr. Lee is now in
> treatment through DISC Village, mental health treatment.
> He's receiving significant mental health – or medication.

ECF No. 85 at 220.

Counsel assured the court that Lee was receiving and taking

medications as prescribed.   The court referred to Lee's release status

report and noted:

> THE COURT:   So the record is clear, the release status
> report confirms a number of things that Mr. DeBelder had
> represented to the Court; namely, the defendant is currently
> under the supervision of a psychiatrist with the Apalachee
> Mental Health Center, as well as receiving mental health
> counseling with DISC Village; that Mr. Lee has been prescribed
> various psychotropic medications, and because this medication
> is extremely expensive, our pretrial officer is in the process
> of obtaining free medication from a pharmaceutical company.
> Our pretrial service officer recommends the defendant
> report to pretrial services as directed and notes that he has
> been in compliance with the local monitoring program and
> submits negative urinalysis.

ECF No. 85 at 222.   The court observed that Lee had been at liberty

for roughly five months without incident.   *Id.* at 223.   Neither party

could definitively respond to the court's inquiry about whether Lee

had previously received mental health treatment, and the record

contains no indication of previous efforts to ensure Lee was properly

diagnosed and receiving appropriate medication.   Mr. DeBelder

further explained:

> MR. DeBELDER:   Judge, I think more for me as we get
> to sentencing on this issue, but as I said, Mr. Lee does
> have some significant mental health issues that I think for
> the first time are really appropriately getting treated.   And
> it sounds like Ms. Sanchez is – from this report, and from
> what she has represented to me, -- is getting close to
> really sort of greasing the wheels to him receiving the
> right medication.   He's been in compliance for five
> months, as the Court noted.

*Id.* at 224-225.   DeBelder clarified that Lee was receiving medication, but

that Ms. Sanchez was working on getting him free medication from the

pharmaceutical company since they had found something that was

working.   *Id.* at 225.   He stated:

> I can tell the Court there was a time where [Lee] was
> taking one type of psychotropic medication that was
> making him quite ill, and that was part of the reason why
> there was (sic) continuances.   The Court remembers we
> had to deal with that.   But he seems to have gotten
> something that he's stable.
> And I can tell the Court from my – the dealings with Mr.
> Lee, that it's really night and day from August until today,
> the way he's able to function.

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

ECF No. 85 at 225.   The court allowed Lee to remain on pre-trial release pending sentencing based largely on his successful release to that point.

Lee retained attorney Charles Hobbs to represent him at sentencing and on appeal, and Assistant Federal Public Defender DeBelder withdrew from the case.   ECF Nos. 66-68.   The Presentence Investigation Report ("PSR") determined that the applicable guidelines range was the statutory maximum sentence of 120 months.   ECF No. 69, PSR ¶ 20.   Absent the application of the statutory maximum, Lee would have faced a sentence of between 151 and 188 months' imprisonment.   *Id.*

At sentencing, the court indicated its desire to factor in Lee's mental health issues in determining the appropriate sentence.   During the ensuing discussion, neither party raised any question of Lee's competency.   ECF No. 86 at 25-29.   The court observed that Lee's "affect is not completely right" and stated its intent to order mental health treatment as part of his sentence.   *Id.* at 31.   It identified Lee's mental health as a mitigating factor in its determination of the appropriate sentence.   *Id.* at 32.   Hobbs advised the court that Lee did not take his psychotropic medication the previous night because it made him "loopy and drowsy" and he wanted to be able to fully comprehend the proceedings.   *Id.* at 33.

The court sentenced Lee to a below-guidelines term of seven years imprisonment followed by three years of supervised release.   ECF No. 86 at 34-35.   It found that any sentence below a seven-year custodial sentence would be inadequate, but that doubling the longest prior term Lee had previously served, followed by three years of supervised release, was sufficient.

Lee appealed, challenging an evidentiary ruling by the district court allowing the Government to introduce five pictures of guns found on Lee's cell phone.   ECF No. 89.   The Eleventh Circuit found no abuse of discretion.   Lee also claimed that counsel improperly refused to call a witness at trial, suggesting that counsel's decision was based on what Lee considered to be an unspecified conflict of interest.   *Id.* at 8.   The trial court, Lee argued, erred in failing to further investigate the reason for counsel's decision.   The Eleventh Circuit found the court was "completely unaware of the basis of trial counsel's decision," and thus it did not err in failing to further investigate.   *Id.* at 8-9.   To the extent Lee's claim was an ineffective assistance of counsel claim, the Eleventh Circuit declined to consider it, noting that a § 2255 motion was the better vehicle for developing and considering such a claim.   *Id.* at 9.

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

Lee timely filed the instant motion, raising five claims for relief.   Two claims relate to counsel's failure to call Russell as a witness at trial, and three relate to Lee's competency.

## II.    ANALYSIS

### A. General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."   *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014).   Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.   *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States*

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

*v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36

F.3d 1052, 1056 (11th Cir. 1994). "Under the procedural default rule, a

defendant generally must advance an available challenge to a criminal

conviction or sentence on direct appeal or else the defendant is barred

from presenting that claim in a § 2255 proceeding." *Lynn v. United States,*

365 F.3d 1225, 1234 (11th Cir. 2004).

Ineffective assistance of counsel claims generally are not cognizable

on direct appeal and are properly raised by a § 2255 motion regardless of

whether they could have been brought on direct appeal.    *Massaro v.*

*United States*, 538 U.S. 500, 503 (2003); *see also United States v.*

*Franklin*, 694 F.3d 1, 8 (11th Cir. 2012).    In order to prevail on a claim of

ineffective assistance of counsel, a defendant must show (1) his attorney's

representation fell below "an objective standard of reasonableness," and

(2) a reasonable probability exists that, but for counsel's unprofessional

conduct, the result of the proceeding would have been different.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).    "The burden of

persuasion is on a section 2255 petitioner to prove, by a preponderance of

the competent evidence, both that counsel's performance was

unreasonable, and that [ ]he was prejudiced by that performance."    *Demar*

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

*v. United States*, 228 F. App'x 940, 950 (11th Cir. 2007) (quotation marks, brackets, and citations omitted)[1]; *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail.").   In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.   *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

   In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."   *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).   Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional

---

[1] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."   11th Cir. R. 36-2.

assistance." *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").    Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.    *Strickland*, 466 U.S. at 689.    To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."    *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different.    *Strickland*, 466 U.S. at 694.    "The likelihood of a different result must be substantial, not just conceivable."    *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).    For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which

the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).   A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

To establish ineffective assistance, a defendant must provide factual support for his contentions regarding counsel's performance.   *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992).   Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.   *Hollis v. United States,* 958 F. 3d 1120, 1124 (11th Cir. 2020).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."   *Chandler*, 218 F.3d at

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

1313.   This is because the test is not what the best lawyers would have

done or even what most good lawyers would have done, but rather whether

some reasonable lawyer could have acted in the circumstances as defense

counsel acted. *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th

Cir. 2007); *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).

An evidentiary hearing is unnecessary when "the motion and files and

records conclusively show that the prisoner is entitled to no relief."   *See* 28

U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir.

2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).

Not every claim of ineffective assistance of counsel warrants an evidentiary

hearing.   *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d

707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must

allege facts that, if true, would prove he is entitled to relief.   *See*

*Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).   A

hearing is not required on frivolous claims, conclusory allegations

unsupported by specifics, or contentions that are wholly unsupported by the

record.   *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th

Cir. 2014) (explaining that "a district court need not hold a hearing if the

allegations [in a § 2255 motion] are . . . based upon unsupported

generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.   *Lynn*, 365 F.3d at 1239.   Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

### B. Witness Jacob Russell (Grounds One and Three)

Two of Lee's claims relate to his disagreement with counsel about calling Jacob Russell as a witness at trial.   Lee claims in Ground One that counsel was constitutionally ineffective because, had he conducted a pre-trial investigation in the case, counsel would have "found Mr. Jacob Russell".   ECF No. 91 at 3.   In Ground Three, Lee asserts counsel was constitutionally ineffective for failing to present Russell's testimony at trial. *Id.* at 4.

In support of his claims, Lee has submitted what purports to be the affidavit of Jacob Russell.[2]   Russell states that after seeing law enforcement's flashing lights just before the stop, he pushed the .40 caliber

---

[2] The document is sworn under penalty of perjury although it was not signed before a notary public or other official.   The Government questions the authenticity of the document, noting the vast difference in Russell's signature on the date of the events in question and on the date he signed the affidavit.   ECF No. 98 at 17.

Glock under the driver's seat and moved to the opposite side of the car's

back seat.   ECF No. 92-1 at 1.   Russell avers that Lee did not have any

knowledge of the gun or that Russell had put it under Lee's seat.   *Id.* at 2.

He claims he would have admitted to the police at the time that the gun

belonged to him, but he was high from smoking marijuana and was scared

of the police.   *Id.*   Russell also claims he was willing to testify on Lee's

behalf, had he been called.

Lee's assertion that counsel's performance was constitutionally

ineffective due to his failure to discover and call Russell as a witness does

not withstand scrutiny.   First, the record as set forth above establishes

that, contrary to Lee's assertion, Russell was not an "undiscovered"

witness.   Second, the record reflects that counsel made a strategic

decision not to call Russell at trial, believing his testimony would be

detrimental to Lee's case.   This decision was not unreasonable.   The

affidavit submitted in support of Lee's § 2255 motion contradicts a sworn

statement Russell gave to law enforcement on the date of Lee's arrest.   In

the previous statement Russell disavowed any knowledge of a gun in the

car, and he reported having seen Lee, whom he had known for

approximately eight years, with a Glock on a regular basis.   ECF No. 98-1

at 1-2.

At trial, the district court clarified for Lee the balance of decision-

making responsibility between a lawyer and client, noting that lawyers are

responsible for tactical decisions, such as which witnesses to call.   ECF

No. 85 at 127-128.   The decision "[w]hich witnesses, if any, to call, and

when to call them, is the epitome of a strategic decision," that reviewing

courts "will seldom, if ever, second guess."   *Waters v. Thomas*, 46 F. 3d

1506, 1512 (11th Cir. 1995).   DeBelder stated on the record that he did not

believe it was "in [Lee's] best interests to call Mr. Russell" and agreed with

the court that Russell's testimony "would be detrimental to the defense

case."   ECF No. 85 at 127.   "[C]ounsel cannot be adjudged incompetent

for performing in a particular way in a case, as long as the approach taken

'might be considered sound trial strategy.'"   *Chandler*, 218 F. 3d at 1314

(*quoting Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d

144 (1986)).   If the record is incomplete or unclear about counsel's

actions, then it is presumed that counsel exercised reasonable professional

judgment.   *See Chandler*, 218 F. 3d at 1314–15 n. 15.   Counsel cannot

be deemed constitutionally ineffective for choosing not to call a witness whose testimony would harm his client's case.

Counsel's expectation that Russell's testimony would negatively impact Lee's case is well-founded, given Russell's incriminating statements to law enforcement.   Lee has not alleged that counsel had any reason to believe that Russell's sworn statement to law enforcement was false or that he had subsequently recanted it.   DeBelder could have called Russell to testify.   If he had, and Russell testified, consistent with his statement to law enforcement, that he did not know of any guns in the car but he knew Lee to carry a Glock on a regular basis, such testimony would have further inculpated Lee.   Conversely, had Russell testified consistent with his affidavit in support of Lee's § 2255 motion that the Glock belonged to Russell and Lee did not know about it, the Government would have impeached Russell's testimony with his statements to law enforcement. Despite the detail in Russell's affidavit, there is nothing contained therein that would explain the discrepancy between the two statements.

Finally, the court notes that Lee's appellate brief contains the representation that trial counsel did not call Russell as a witness because

he "looked as if he was high."   ECF No. 102-1 at 16.[3]   This further weighs

in favor of counsel's decision not to elicit testimony from Russell.   A jury is

arguably less likely to consider favorably the testimony of a witness who is

visibly under the influence of controlled substances, and such a witness's

testimony could be fraught with unpredictability, confusion, lack of clarity or

consistency.

In sum, Lee has not shown that no competent counsel would have

declined to call Russell as a witness at trial.   Additionally, he has not

shown that the outcome of the proceedings would have been different had

Russell testified as he now claims he would have.   Therefore, Lee is not

entitled to relief on either Ground One or Ground Three of his motion.

C. Lee's Competency (Grounds Two, Four and Five)

Lee raises three grounds for relief related to his competency.   In

Ground Two, he contends that counsel was constitutionally ineffective for

failing to disclose a "conflict of interest," to wit, that counsel was aware of

Lee's "mental defect" prior to trial and did not disclose it.   ECF No. 91 at 3.

In Grounds Four and Five Lee asserts counsel was ineffective because he

---

[3] The record does not reflect why the Government did not to call Russell as a witness.

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

did not seek a pre-trial competency hearing pursuant to 18 U.S.C.

§§ 4241(a) and § 4247(d) respectively.   *Id.* at 4, 5.   He also complains

that counsel deliberately waived Lee's right to a hearing pursuant to 18

U.S.C. § 4247(d).   ECF No. 92 at 11.

Lee's characterization of an alleged failure to disclose a question

about a client's competency as a "conflict of interest" is misguided.

Nothing in the record suggests that counsel's interests were in any way at

odds with those of his client, and there is no evidence that "an actual

conflict of interest adversely affected his lawyer's performance."   *Cuyler v.*

*Sullivan*, 446 U.S. 335, 348 (1980).   Thus, Ground Two is without merit.

Title 18 U.S.C. § 4241 provides that either party may request a

hearing to determine a defendant's mental competency:

> if there is reasonable cause to believe that the defendant may
> presently be suffering from a mental disease or defect
> rendering him mentally incompetent to the extent that he is
> unable to understand the nature and consequences of the
> proceedings against him or to assist properly in his defense."
> or the court.

18 U.S.C. § 4241(a).   Lee maintains that counsel should have requested a

hearing based on information provided to him by Lee's mother, Valerie

Rogers.   Ms. Rogers states in her affidavit, dated March 16, 2018, that her

son "does not have a sufficient present ability to consult with his attorney with a reasonable degree of rational understanding nor a factual understanding of the proceedings."   ECF No. 92-2 at 1.   Ms. Rogers also avers that she told her son's attorney about his mental condition.   Lee asserts that counsel "is not a 'mental health' specialist [and] does not have the knowledge and skill necessary to make an accurate determination" and therefore should have relied and acted on information provided by Ms. Rogers.   ECF No. 92 at 10.   Ms. Rogers, however, also does not present herself as any sort of mental health expert.

"Every defendant has a substantive fundamental right under the Due Process Clause not to be tried or convicted while incompetent."   *United States v. Wingo*, 789 F. 3d 1226, 1236 (11th Cir. 2015).   "Competence to proceed to trial or to enter a guilty plea requires the defendant to possess the 'capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.'" *Id.* at 1234–35 (internal citation omitted) (*quoting Drope v. Missouri*, 420 U.S. 162, 171 (1975)).   A trial court must hold a hearing either upon motion of the parties or sua sponte if there is a bona fide doubt concerning a defendant's competency.   18 U.S.C. § 4241(a).   In

assessing the existence of a bona fide doubt, the court considers three

factors: "(1) evidence of the defendant's irrational behavior; (2) the

defendant's demeanor at trial; and (3) prior medical opinion regarding the

defendant's competence to stand trial."    *Tiller v. Esposito*, 911 F. 2d 575,

576 (11th Cir. 1990) (*citing Drope*, 420 U.S. at 180); *Wingo*, 789 F. 3d at

1236.    The "bona fide doubt" standard satisfies § 4241(a)'s "reasonable

cause" requirement.    *Wingo*, 789 F. 3d at 1236 (citing *United States v.

Nickels*, 324 F. 3d 1250, 1251-52 (11th Cir. 2003) (per curiam)).    In the

context of an ineffective assistance of counsel claim, to show prejudice, a

defendant is "required to show that there was a reasonable probability that

he would have received a competency hearing *and* been found

incompetent had counsel requested the hearing."    *Lawrence v. Sec'y, Fla.

Dept. of Corrections*, 700 F. 3d 464, 479 (11th Cir. 2012) (emphasis in

original).

As to the first factor, Lee has pointed to no irrational behavior before

or during trial.    His claim that he was hallucinating in court, was delusional,

and was not functioning normally is conclusory and lacking independent

record support.    ECF No. 92 at 6.    "[N]ot every manifestation of mental

illness demonstrates incompetence to stand trial; rather, the evidence must

indicate a present inability to assist counsel or understand the charges."

*Card v. Singletary*, 981 F.2d 481, 488 (11th Cir. 1992) (*quoting United*

*States ex re. Foster v. DeRobertis,* 741 F. 2d 1007, 1012 (7th Cir. 1985)).

Lee also claims the medication he was taking was negatively affecting his

judgment and comprehension.   ECF No. 92 at 6.   However, the fact that a

defendant is "being treated with anti-psychotic drugs [does] not per se

render him incompetent to stand trial."   *See Fallada v. Dugger,* 819 F. 2d

1564, 1569 (11th Cir. 1987) (citations omitted).   While the use of drugs is a

relevant factor in the trial judge's determination, to be entitled to a hearing

Lee must present specific evidence demonstrating that the dosage he was

taking "affected him sufficiently adversely as to raise a doubt of his ability to

consult with his lawyer and to have a rational understanding of the

proceedings against him."   *Id. (citations omitted).*   As noted by DeBelder's

motion for continuance, Lee's behavior significantly *improved* while on

psychotropic medication.   ECF No. 22 at 1-2.

        Second, there is no record evidence of anything inappropriate about

Lee's demeanor at trial.   Lee engaged in colloquies with the court,

responded intelligently and appropriately to questions and clearly exhibited

the "capacity to understand the nature and object of the proceedings

against him, to consult with counsel, and to assist in preparing his defense," even expressing his disagreement with counsel over trial strategy.   *See* ECF No. 85 at 125-29; *Wingo*, 789 F. 3d at 1234—35 (*quoting Drope*, 420 U.S. at 171); *United States v. Jackson*, 815 Fed. App'x 398, 403 (11th Cir. 2020).   Lee never brought up any difficultly he was having during the proceedings as a result of his medication or general mental health issues.   *See* ECF No. 85 at 125-29; 165-67, 227.   After Lee's conviction, DeBelder again cited the difference an appropriate regimen of psychotropic medication had made in Lee's cognitive state from the time of his arrest until trial, suggesting this was a valid basis for allowing Lee to continue on release, and the court agreed.   *Id.* at 225-26. The court instructed Lee to continue taking his medication and he agreed without comment or complaint.   *Id.* at 227.

Finally, there is no record evidence of the existence of any medical opinion that would raise a bona fide doubt as to Lee's competence.   To the contrary, Lee had several prior convictions in state court.   ECF No. 69, PSR ¶¶ 40-44.

In sum, the record does not support a finding that DeBelder was constitutionally ineffective for failing to seek a competency hearing for Lee.

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

DeBelder, as Lee's attorney, was in the best position to determine whether Lee's competency was suspect.    *See United States v. Saingerard,* 394 F. App'x 641, 642 (11th Cir. 2010) (*quoting Watts v. Singletary*, 87 F.3d 1282, 1288 (11th Cir. 1996)).    When appropriate, DeBelder took steps to ensure Lee was receiving mental health treatment and sought a continuance to ensure he had adequate time to properly prepare Lee for trial once that treatment was in place.    Similarly, sentencing counsel, who also acknowledged Lee's mental health issues and need for treatment, did not ask for a review of his client's competency or make any complaints in this regard.    The record does not support a finding that the court would have found Lee incompetent, had counsel requested the hearing.    *Lawrence*, 700 F. 3d at 479.    Thus, Lee is not entitled to relief on Grounds Two, Four and Five of his § 2255 motion.

## III.    <u>CONCLUSION</u>

An evidentiary hearing is not necessary to resolve Lee's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877.    For the foregoing reasons, the court finds that Lee has not shown that any of the claims raised in his motion to vacate, set aside, or correct

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

sentence pursuant to 28 U.S.C. § 2255 have merit.   Therefore, his motion

should be denied in its entirety.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings

provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant," and if a

certificate is issued "the court must state the specific issue or issues that

satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of

appeal must still be filed, even if the court issues a certificate of

appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the

denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.

473, 483–84 (2000) (explaining how to satisfy this showing) (citation

omitted).   Therefore, it is also recommended that the court deny a certificate

of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final

order, the court may direct the parties to submit arguments on whether a

certificate should issue."   If there is an objection to this recommendation by

either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    Lee's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 91) be **DENIED**.

2.    A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 3rd day of December, 2020.


s/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

        **Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.    Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.    An objecting party must serve a copy of its objections on all other parties.    A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.    See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**